The next matter, number 171653, Elba y Falto-de Roman v. Municipal Gov't of Mayaguez. Good morning, Your Honors. I am Rolando Gonzalez on behalf of Plaintiff Appellant Elba Falto-de Roman. When we filed for summary judgment, we presented that appellant's due process rights had been violated. The response by the appellant, the mayor, was that that was not true because they didn't dismiss Ms. Elba Falto. Allow me to quote from the opinion and order entered by Mag. Judge Bruce McGibbon on February 5, 2014. That's at page 11 of our addendum. Defendants claim Falto was never dismissed. That she remained as an employee of the municipality and was merely removed from her position as director of the Head Start program. The defendant claimed that Falto was not dismissed because the letter of September 20 does not use the word dismissed. She wrongly interpreted the letter as a termination and she essentially abandoned her post with the city by leaving on September 28 and never returning to work. And this sentence for us is very important. The mayor also asserts that they did not intend to terminate Falto employment with the municipality. Now, how can the mayor say that he would have dismissed an appellant even if a determination hearing was given? He first said that they did not intend to terminate Falto. Now, how can a reasonable jury find that there was a valid reason for the termination even if a determination hearing had been given? If the reason in response to our motion for summary judgment on the due process claim was that she was never dismissed? Here, Your Honor, we are not talking about two persons presenting two different issues. We are talking about the same person, the mayor, that first says she was never dismissed, I didn't have the intention to dismiss her. She simply misinterpreted the letter and she left, abandoned her position. When the court found that Falto was indeed dismissed, then the police argued that Falto was dismissed because of a withdrawal of trust. As it was stated in the letter of dismissal, which is page 18 of our appendix. The letter stated, this is a firm and final decision based on the withdrawal of trust, which means that I don't trust that person no more. She holds a trust position. Therefore, I don't have to give any reason why I have dismissed her. When we presented that the position of Director of the Municipality Head Start Program was not a trust position but a career position, then they came with a third reason. They presented that she did not have appropriate interest in her positions as Director of the Municipality Head Start Program. So, as I understand it, on day one, what you're saying is the mayor said, we didn't intend, we did not intend to dismiss her. Correctly. And then on day two, the mayor says, oh, actually we would have dismissed her anyhow. Well, not exactly on day two. Using your same wording, it would have been, as we'll see, on day eight. Okay. Because there were eight different reasons given. Once we attacked the reason that they gave, they would go with another reason. So you're saying the defendant was talking out of both sides of his mouth, saying one thing one time, saying other things, different versions other times. Right. Fine. Very compelling point to argue to a jury. Why couldn't the jury then decide, you know, we agree with you, all those things couldn't be true. Only one of them is true. And then they have to decide which one is true. And they decide he's not telling the truth on day one, but he was. They would have fired her anyhow. Because, what we believe, Your Honor, is that that's a valid conclusion. If we have two different persons stating two different things. No, one person, but they can only be telling the truth on day one or day two. Right. And which is it? Day one or day two? Well, if the same person is stating two different things, obviously, that person is lying in one of those things. Sure. So, my... But which one? My way to present this is that if that occurred, no reasonable jury can give way to that reason as to be so powerful to reach the conclusion that she would be dismissed even if a pre-termination hearing had begun. Because the truth is that the major never had the intention to give that pre-termination hearing. And his arguments were so different one from another that we sustain, Your Honor, that no reasonable jury could reach that conclusion. The jury didn't reach that conclusion. And that's why we're appealing. Because we sustain that due to the facts in this particular case, and due to the fact that so many reasons were given for the dismissal, it is not logical to conclude that a reasonable jury could determine that, in fact, there were reasons enough to dismiss. Weren't there events that happened after the dismissal letter? Pardon me? They send the dismissal letter. They have a certain state of mind the time they send the letter. Mm-hmm. Thereafter, but prior to trial, didn't the federal government take away some of the automatic designation of that program? Yes, Your Honor, but as we represent in our brief, that's something that happened after she was dismissed. Sure, but it was... And the rules were not that there was something wrong with the program and that those things that were wrong were not corrected. To the contrary, the rules were that merely the fact that they present some findings, they had to compete. And this fact had nothing to do with this. Because, in fact, Your Honor, as we present in our brief, the letter issue stated, if in 120 days you don't correct this, and if in 30 days you don't correct this, we're going to send you a letter stating that you are out of the program. When the federal government withdrew the designation as an automatic fundee, wasn't that based entirely on circumstances and affairs and the way the world existed while she was in control? Not exactly, Your Honor. That was a rule that... There were no new facts. There was nothing that arose between when she left and when the government withdrew the programs that the government relied on, as I understand correctly. Yes, Your Honor, but as we read this, this is not a ruling that was made for this case. It was a ruling that was made for the whole programs. We stated merely that if we, their strong findings, presented, the automatic renewal would not apply. You will have to compete for that. And as I said before, Your Honor, I strongly believe that there was no way that the mayor could have in his mind, at the time that he dismissed Ms. Falco, that this was a reason sufficient to dismiss her because that reason did not exist at that time. And only, and I want to emphasize only, after the six or seven reasons was challenged by us is that they come with this reason that, oh, we have to compete because of you. And I resent, Your Honor, that it's not correct to state that Ms. Falco would have been dismissed for something that happened to be a new rule enacted after she was dismissed. Well, help me with this. Suppose the day they sent her the letter, they really didn't intend to dismiss her. Twenty days later, she killed two employees. She murdered them. Couldn't the jury find that even though they didn't intend to dismiss her when they sent her the letter and they should have given her a hearing, in fact, she would have ended up losing the hearing because at the hearing, the evidence of the murders would have come in. I completely agree with you. If that had been a reason. My question is, why isn't the letter from the government that came in after the townspeople? Why isn't that like the murders as far as it's something that came in that the jury could consider would have resulted in her dismissal? May I finish? Yes. Because what really happened was the only thing that the municipality had to do was compete again. And as a matter of fact, they did compete again and the program was again given to them. They say in the, I believe in the brief, they say that they lost some funds and that's not true. The only fund that they lost was that the next town or Miguel was with municipality of Mayaguez and they decided to have their own program. And because they decided to have their own program, those funds that were assigned to that city were taken away from the city of Mayaguez. And the only thing that really happened was that they had to compete and that competition was given. No ill effects were affected. Why take the decision to dismiss a person that had been working for over 30, 10 years and never one single complaint had been filed against her? We sustain our own very respectfully that there is a principle of progressive discipline that should have been applied and there was not one single reason that justified the dismissal of Ms. Elba Falta. Thank you. Good morning. My name is Claudio Alive and I appear on behalf of the police municipality of Mayaguez. Your Honor, the situation here is that we're not before a judgment issued after a motion for summary judgment. We are here before a jury verdict rendered after a full trial where the jury received the evidence that supported the facts that the plaintiff did not receive any suffered any damages as a result of the lack of a determination hearing. That the plaintiff would have been dismissed regardless of her having that opportunity to defend during a determination hearing and that the mayor did not act recklessly when he decided to terminate plaintiff immediately. Here we have another problem and a big hurdle that I think that the applicants have not overcome, which is that they waived their arguments for a motion for judgment as a matter of law under Rule 50B. Because they never argued before the district court, they did not present any arguments in support of their position nor to challenge the evidence presented by the defense to establish that they would have reached the same decision even if she had, meaning the applicant received a full determination hearing. Nor did the applicant argue before the district court the matter of pretext of the reasons proffered by the defendants before the jury. So based on your decisions in Hammond and Jones versus Massachusetts General, because appellant did not preserve her arguments through a Rule 50A motion, the Rule 50B motion that is before you is waived. But they have a new trial motion. Oh yes, they also do. Doesn't that raise the same issue as far as if the evidence is truly below the minimum that is sufficient to support a jury verdict? But the hurdle there is bigger for the appellant. Because here you have a judge, a trial judge, who heard the same evidence the jury received, who had the same documents the jury received, and after it received that evidence it decided not to disturb the jury verdict. Let me ask it this way. If we look through the record and we were to determine it is not minimally sufficient to support the jury verdict, wouldn't we be compelled to reverse? Well, that would be the standard of review. I think that's the same standard that the other side is arguing. Well, I submit, we submit, Your Honor, that the evidence is full of evidence that supports the jury verdict. First of all, I refer this court to Joint Exhibit 3. It's a letter dated August-September 12, where the governing board itemized all the difficulties the governing bodies have had with the appellant throughout their incumbency. Supported with all the documents. Also, I refer the honorable court to Defendants Exhibits 8 through 9. A list of documents showing the antagonism between appellants and the governing boards and the lack of respect, the lack of recognition, the lack of communication and cooperation with the governing bodies that the appellant had throughout the incumbency of these two entities. And all of that is prior to September 12. Oh, yes, Your Honor. And I think the argument being made on the other side is that your client, the mayor, testified unreservedly that as of September 12, he did not intend to dismiss it. Well, that testimony is not on the record. He relies on the decisions, on the arguments made in the motion for summary judgment, which, according to Jones v. Massachusetts General, gets completely overtaken once the case goes to a jury trial and the jury verdict is rendered. So the arguments in the motion for summary judgment, if they are not presented through evidence to the jury, cannot be considered. So are you telling us that once the trial started, the plaintiff never put into evidence the statements that the mayor had made in opposing the summary judgment motion? Yes, Your Honor. If you look at the brief, the appellant's file, there is no direction. She doesn't point to any direction, to any page, paragraph, line in the record that supports that the mayor testified to the effects that they argued are contained in the motion for summary judgment. So the record is devoid of evidence. To that effect, the motion is devoid of evidence that challenges the valid reasons offered by the appellants to justify plaintiff's termination from the client. Thank you. Thank you. Thank you. Good morning. May it please the court. My name is Carlos Lugo. I'm representing the mayor of Mayaguez in his personal capacity, Jose Guillermo Rodriguez. We joined the brief filed by the official appellees. But I wanted to discuss in our argument, I wanted to discuss the matter of punitive damages. But before going there, I want to address, I want to state something about the arguments made by broader counsel for appellants in his argument. It is that even assuming that he is correct and that there is evidence, there was evidence before the jury of various versions of the mayor's justification for dismissal. That is a matter of credibility for the jury. It's a matter of presenting. He had to present those versions in cross-examination to the witness board through other testimony. And it will go to the jury to determine credibility. At this stage, it is not enough to simply say he said two or three different versions. He has to say the version made by the jury is so inherently incredible that the jury wasn't reasonable. That he doesn't achieve in his brief. Going back to the punitive damages, the matter of punitive damages, his claim was submitted to the jury. He did not object, plaintiff did not object to your instruction. Your instruction is consistent with the decision of the Supreme Court in Smith v. Wade. And the jury evaluated the conflicting evidence, decided not to award plaintiff any punitive damages. And at this stage, to evaluate the judgment under Rule 50, the court has to take the evidence in the light most favorable to the jury verdict. To the non-moving party. And in this case, there is sample evidence for the record to sustain the position of the municipality and to sustain the position of the mayor. Particularly Joint Exhibit, and I want to point out as an example, Joint Exhibit 3, which is in appendix pages 23 to 26 of the appendix. Which is the letter from the governing board of September 12, 2011 to the mayor. And in that letter, the governing board, which are the supervisors of plaintiff, which were the supervisors of plaintiff, detailed many reasons why they simply could not work with her. And in this document, and all the other evidence in the record, both testimonial and documentary, supports the jury decision not to afford punitive damages and not to award compensatory damages. Thank you. Thank you.